IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CRAIG YOW**,

**PLAINTIFF,**

v.                                                                                          No. 14-0992-DRH

**JACK COOPER TRANSPORT
COMPANY, INC., and AUTO HANDLING
CORPORATION,**

Defendants.

<u>**MEMORANDUM and ORDER**</u>

**HERNDON, District Judge:**

<u>Introduction and Background</u>

Pending before the Court are motions to dismiss or, in the alternative, transfer (Docs. 40 & 42). Naturally, Yow opposes the motions (Docs. 51 & 52). Based on the following, the Court denies the motions.

On July 31, 2014, Craig Yow filed suit against Jack Cooper Transport Company, Inc. ("JCT") and Auto Handling Corporation ("AHC") in the Madison County, Illinois Circuit Court (Doc. 3-1). Thereafter, AHC removed the case to this Court based on diversity jurisdiction, 28 U.S.C. § 1332 (Doc. 3). On February 9, 2015, Yow filed an amended complaint against JCT and AHC for fraud (Counts I and II), tortious interference with expectancy (Counts III and IV), negligent representation (Counts V and VI), conspiracy (Counts VII and VIII) and personal injury against AHC (Count IX) (Doc. 35). In essence, Yow alleges that AHC and

JCT, acting through their counsel, officers and directors, violated a Rule 224 Order so defendants could keep Yow from learning that AHC was legally responsible for injuries he sustained on a rig in Peoria, Illinois manufactured by Cottrell, Inc. in 2003.[1] Yow further alleges that defendants' efforts divested the Madison County, Illinois Circuit Court of jurisdiction and that his case was removed to this Court where it was litigated from 2004 to 2007. *See See Yow v. Cottrell, Inc.*, 04-CV-0888-DRH.

Yow maintains that AHC is the wholly-owned subsidiary of JCT and that they have the same officers, directors and legal counsel in cases relating to product liability claims. Yow further alleges in his amended complaint:

> 5. This cause of action originated from a Rule 224 Order issued by the Circuit Court of Madison County, Illinois, discovery related thereto, and information obtained on and after the filing of a motion for sanctions brought on Mr. Yow's behalf in December of 2009. …
> 6. The allegations in this Complaint were referred to in Plaintiff's December 2009 motion for sanctions and in subsequent filings, all of which were served on counsel for Defendants, and include conduct that also occurred while Mr. Yow's action for personal

---

[1] On January 20, 2004, Yow (at that time a Missouri citizen) filed a discovery action, a verified petition pursuant to Illinois Supreme Court Rule 224, against his employer JCT in the Madison County, Illinois Circuit Court seeking to discover the identity of the parties responsible for the design, manufacture, distribution, and maintenance of the trailer that injured Yow on February 14, 2003. Yow was injured while operating the rear loading skid of a rig manufactured and designed by Cottrell as of his duties as a car hauler for JCT. Yow sought the deposition of JCT through a corporate designee who had "sufficient information to provide the name and address of each of the persons and entities sought to be identified and simultaneously produce copies of all records relating to each trailer to show the date of the manufacture and the identity of all: owners, sellers, lessors, manufacturers, maintainers, modifiers, repairers and distributors." On May 3, 2004, JCT "produced its Vice President of Maintenance, Gary Page, for his deposition on subjects contained in petitioners' Verified Petition for Discovery. At the same time and place, Jack Cooper Transport Company, Inc., through its counsel and Gary Page, produced documents relating to the purchase and titling of the two over-the-road- car haul trailers at question …, maintenance summaries and specific maintenance documents for maintenance which has occurred on those trailers since their purchase in 1988." *Hanley v. Cottrell, Inc.,* 04-00438-DRH; Doc. 22, p. 6.

>     injuries against Cottrell, Inc. was litigated in the Southern District of
>     Illinois, a case assigned to the Honorable Judge David Herndon.
>         7.  The Honorable Judge Barbara Crowder entered a judgment
>     on Plaintiff's motion for sanctions on December 6, 2013, in which she
>     stated the relief sought herein could not be obtained through Plaintiff's
>     motion for sanctions, but instead had to be obtained in a separate
>     action.   Judge Crowder's ruling has been appealed by both parties.

(Doc. 35, p. 2).  Yow contends that Gary Page had supervisory control over maintenance, repair and replacement of Cooper Transport and Pacific Motor Trucking Company's equipment and that during his deposition, Page did not identify AHC as a potentially responsible party for the maintenance or modification of the rear loading skids for the trailer used by Yow.  In fact, Yow alleges that Page testified that "there was nothing in Defendant's records to reflect the rear loading skids were in any way modified from the date of manufacture through the date of Mr. Yow's injury." (Doc. 35, p. 5).

Yow contends that JCT "willfully failed to comply with the Rule 224 order, because it did not inform Plaintiffs that Auto Handling Corporation, its wholly-owned subsidiary, who was not Plaintiff's employer, performed maintenance on and modifications to the rear loading skid areas for these trailers." (Doc. 35, p. 6).  Moreover, Yow alleges that "first time JCT produced discovery in litigation involving Mr. Yow that established the involvement of Auto Handling Corporation in modifications to the trailer on which he was injured was in 2011, following rulings by the Circuit Court of Madison County granting Yow's motion to compel in part." (Doc. 35, p. 6).  Specifically, Yow alleges that "[a]s a result of the conduct of AHC and JCT, Mr. Yow was deprived of the opportunity to pursue

defendants who may have been responsible, at least in part, for his injuries, causing damage to his personal property." (Doc. 35, p. 7).

Also, Yow's amended complaint alleges:

> Page submitted an 'errata sheet' on June 29, 2004 in which he stated the skids on the rigs used by Yow were replaced. Page's errata sheet did not state Auto Handling Corporation was involved in the replacement of these skids. Page's affidavit stated the dates for the replacement of the skids on the rigs used by Mr. Yow (October 21, 2002 and January 16, 2003) were matched to invoices listing 'Jack Cooper Transport Co., Inc.' for these dates, indicating the work was performed at the Wentzville, Missouri terminal.

Doc. 35, p. 7. Furthermore, Yow maintains that he "was forced to settle his case for far less than its value because he believed JCT was responsible for the modifications of his trailer. The magistrate judge handling the settlement conference told him that because the replacement skid had been modified, he most likely would not win his case and he and his then-spouse would be required to pay Cottrell's court costs. Plaintiff settled his case with Cottrell based upon the repeated statement by Cottrell's lawyers and by the federal magistrate judge 'that Cottrell's position that the trailer had been modified, was a strong one and we could very likely lose at trial on that issue.'" (Doc. 35, p. 10).

In addition, Yow alleges that "[i]n 2011, Defendant JCT submitted an affidavit stating 'In or about April 2001, Cooper Transport took over operation of the automobile transport terminal at Wentzville, Missouri. At the time, Cooper Transport took over operation to the Wentzville terminal, the mechanics who performed inspections and repairs on Coper Transport's rigs became employed by

Auto Handling Corporation.'" (Doc. 35, p. 12). Yow also alleges that on December 6, 2013 "[t]he Circuit Court of Madison County held that Defendant JCT violated the Rule 224 Order by not disclosing that the work on Mr. Yow's trailer was performed by Auto Handling Corporation, its wholly-owned subsidiary. The Court recognized that in the original personal injury litigation, Plaintiff could not sue Defendant for any role it had in the replacement of the skids due to workers' compensation exclusivity. The court held that Defendant was required by the Rule 224 Order to disclose the identity of Auto Handling Corporation, and that it violated the Order." (Doc. 35, p. 13).

## Motion to Dismiss Standards

When personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Purdue Research Found. v. Sanofi–Syntholabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citing *Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000)). If the issue of personal jurisdiction is raised by a motion to dismiss and decided on the written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Id.* Thus, the Court must "take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in favor of plaintiff." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)(citing *Purdue Research Found.*, 338 F.3d at 782).

Under Illinois law, the long-arm statute permits personal jurisdiction over a party to the extent allowed under the due process provisions of the Illinois and United States constitutions. 735 ILCS 5/2–209(c); *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 714 (7th Cir. 2002); *Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 940 (7th Cir. 2000). Therefore, whether the Court has jurisdiction over a defendant depends on whether such jurisdiction is permitted by federal and state constitutional standards.

The Illinois Constitution's due process guarantee, Ill. Const. art. I, § 2, permits the assertion of personal jurisdiction "when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1316 (Ill.1990). When interpreting these principles, a court may look to the construction and application of the federal due process clause. *Id.* In fact, the Seventh Circuit Court of Appeals has suggested that there is no operative difference between Illinois and federal due process limits on the exercise of personal jurisdiction. *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 715 (7th Cir.2002) (citing *RAR, Inc. v. Turner Diesel Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997)). The Court sees nothing in this case indicating that in this particular situation the federal and state standards should reach a different result. Therefore, if the contacts between the defendant and Illinois are sufficient to satisfy the requirements of federal due process, then the requirements of both the Illinois

long-arm statute and the Illinois Constitution have also been met, and no other inquiry is necessary.

The Due Process Clause of the Fourteenth Amendment limits when a state may assert personal jurisdiction over nonresident individuals and corporations. *See Pennoyer v. Neff,* 95 U.S. 714, 733, 24 L.Ed. 565 (1877), *overruled on other grounds by Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Under federal due process standards, a court can have personal jurisdiction over a defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The defendant must have purposefully established such minimum contacts with the forum state such that it "should reasonably anticipate being haled into court there," *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980), because it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Burger King Corp. v. Rudzewicz,* 474–75 (1985); *see J. McIntyre Mach., Ltd. v. Nicastro,* 131 S.Ct. 2780, 2788, 180 L.Ed.2d 765 (2011) (Kennedy, J., plurality opinion). In deciding whether exercising jurisdiction offends traditional notions of fair play and substantial justice, the Court may also consider "the burden on the defendant, the

interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

What this standard means in a particular case depends on whether the plaintiff asserts "general" or "specific" jurisdiction. Specific jurisdiction refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 716 (7th Cir. 2002) citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8, 9 (1984)). General jurisdiction, on the other hand, may exist even in suits that do not rise out of or relate to the defendant's contacts so long as the defendant has "continuous and systematic" contacts with the forum state. *Hyatt,* 302 F.3d at 713; *Helicopteros Nacionales,* 466 U.S. at 416.

First, AHC argues that the amended complaint lacks sufficient facts to establish that an Illinois court would have personal jurisdiction against it. Specifically, AHC argues that the amended complaint is devoid of any concrete alleged act or omission by AHC, either involving Mr. Gary Page or otherwise. AHC asserts that it was not a party to the Rule 224 case in the Madison County, Illinois Circuit Court, thus, there is not specific jurisdiction over it. Further, AHC maintains that it does not have any business operations in Illinois; that it does not own, rent or lease property in Illinois; and that it does not employ any employees in Illinois. Further, AHC maintains that it does not have offices, warehouses, maintenance facilities, or other facilities in Illinois and that it does not have bank

accounts or other financial accounts in Illinois. The Court rejects AHC's arguments, agrees with Yow and finds that personal jurisdiction exists over AHC.

Here, the Court finds that Yow has made a prima facie showing that the Court has personal jurisdiction over AHC. The amended complaint alleges that defendants are both insured by the same policy and both had and acted through the same officers and directors, adjusters, and counsel. Further, the amended complaint alleges that defendants violated a 2004 Madison County, Illinois Circuit Court Rule 224 to keep AHC from being named as a defendant in Yow's original personal injury lawsuit. Moreover, Yow alleges that defendants violated the Rule 224 Order to prevent him from learning that AHC was legally responsible for injuries he sustained on a rig in Peoria, Illinois manufactured by Cottrell, Inc. Clearly, the allegations regarding defendants' conduct during the underlying lawsuit and during the Madison County Illinois Circuit Court proceedings occurred within the state of Illinois and within this judicial district. Moreover, Yow alleges that AHC was negligent in modifying the trailer and that the modified trailer was used in Illinois when Yow was injured. Further, Yow alleges that AHC performs maintenance on trailers that regularly pass through this judicial district; that AHC employees deliver vehicles to dealers in Illinois and that AHC mechanics regularly perform work in Illinois. Thus, the Court finds that it has both specific and general jurisdiction over AHC and that maintenance of this suit would not offend traditional notions of fair play and substantial justice, and AHC could reasonably

anticipate being haled into court here. *Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014), citing *Int'l Shoe Co. v. Wash., Office of Unemployment Comp & Placement*, 326 U.S. 310, 319 (1945), and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

Next, AHC argues that the Court should dismiss as untimely Yow's personal injury claim contained in Count IX. AHC essentially argues that Yow should have realized that fraud may have been committed prior to August 2009. Yow counters that the statute of limitations should be equitably tolled as defendants' actions prevented him from timely filing suit and as the 2009 motion for sanctions was brought in the wrong forum.

A Rule 12(b)(6) motion tests the sufficiency of the complaint to state a claim upon which relief can be granted. *Hallinan v. Fraternal Order of Police Chicago Lodge 7*, 570 F.3d 811, 820 (7th Cir. 2009); *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). In reviewing a motion to dismiss, the Court takes as true all factual allegations in plaintiffs' complaint and draws all reasonable inferences in their favor. *See Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009); *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The Supreme Court explained in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that Rule 12(b)(6) dismissal is warranted if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face."

To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that

the pleader is entitled to relief" (Fed.R.Civ.P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O. C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly,* 550 U.S. at 563. Plaintiff's claims "must be plausible on its face," that is, "The complaint must establish a nonnegligible probability that the claim is valid." *Smith v. Med. Benefit Admin'rs. Group, Inc.*, 639 F.3d 277, 281 (7th Cir. 2011).

Generally, a statute of limitations bar is an affirmative defense, and it is "irregular" to dismiss a claim as untimely on a motion to dismiss. *Hollander v. Brown,* 457 F.3d 688, 691 n. (7th Cir. 2006) (quoting *United States v. N. Trust Co.,* 372 F.3d 886, 888 (7th Cir. 2004)). Under Fed.R.Civ.P. 8, a complaint need

not anticipate or overcome affirmative defenses such as the statute of limitations. *Xechem, Inc. v. Bristol–Myers Squibb Co.,* 372 F.3d 899, 901 (7th Cir. 2004). "[B]ecause the period of limitations is an affirmative defense, it is rarely a good reason to dismiss under Rule 12(b)(6). Maybe [the defendant] has itself done something that warrants tolling. Maybe plaintiffs will be unable to prove that [defendant's] acts justify tolling or estoppel.... It is best to await a final decision rather than leap into a subject that evidence may cast in a new light." *Reiser v. Residential Funding Corp.,* 380 F.3d 1027, 1030 (7th Cir. 2004).

As a result, a complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense. However, dismissal under Rule 12(b)(6) is appropriate when the plaintiff effectively pleads himself out of court by alleging facts that are sufficient to satisfy a statute of limitations defense. *Hollander,* 457 F.3d at 691 n. 1. The question at this stage in this case is whether the amended complaint includes a set of facts that if proven would establish a defense to the statute of limitations. *Clark v. City of Braidwood,* 318 F.3d 764, 768 (7th Cir. 2003). With these principles in mind, the Court turns to the allegations of the amended complaint.

Here, based on the allegations of the amended complaint, the Court finds that Yow plausibly alleges several grounds for tolling statute of limitations under both

Missouri and Illinois law.[2] When Yow should have reasonable discovered his injury is a fact issue not amenable to resolution at the motion to dismiss stage. Thus, the Court declines to dismiss Count IX of the amended complaint without fact discovery. *Resier*, 380 F.3d at 1030. The Court finds that Yow has alleged sufficient facts to withstand dismissal on this ground. Thus, the Court denies the motion to dismiss on this ground.

Next, the Court addresses JCT's argument that Yow's claims must be dismissed because they are barred by the doctrine of witness immunity. JCT contends that the claims Yow's amended complaint fails to state a claim because of the well-established rule that no civil action for damages lies for inaccurate or even false testimony. Specifically, JCT argues that it is entitled to absolute immunity from the deposition testimony of its representative, which was given under oath in the Rule 224 Action, because the testimony was given through a corporate representative designee and was directly related to the matters at issue in the Rule 224 Action. Yow counters that JCT cannot invoke witness immunity because the complaint is not limited to Page's testimony as JCT's corporate representative; Page was under oath not JCT and this case does not fit within Missouri's narrow witness immunity.

"Missouri has recognized witness immunity. The immunity is one that is generally related to defamation actions against adverse witness. *Hager v. Major*,

---

2 Further, the Court notes, the parties did not thoroughly address choice of law principles as to whether Missouri or Illinois law applies.

353 Mo. 1166, 186 S.W.2d 564 (1945); *Laun v. Union Electric*, 350 Mo. 572, 166 S.W.2d 1065 (1943); *Jones v. Brownlee*, 161 Mo. 258, 61 S.W. 795 (1901); *Hyde v. McCabe*, 100 Mo. 412, 13 S.W. 875 (1890)." *Murphy v. A. A. Mathews*, 841 S.W.2d 671, 674 (MO. 1992).[3] "Witness immunity, often referred to as a privilege, originated in defamation law. The law of defamation divides privileges in two general classes: (1) that which is qualifiedly or conditionally privileged, and (2) that which is absolutely privileged. *Laun*, 166 S.W.2d at 1068. Absolute privilege is considered 'absolute' because it immunizes a witness from liability in a subsequent defamation action even if the witness's statements were made with malice. Qualified or conditional privilege grants immunity only if the statements were made in good faith. *Id., citing* 22 Mich.L.Rev. 437; 1 Cooley, *Torts*, p. 525." *Id.* at 674-75. "Witness immunity is an exception to the general rules of liability. It should not be extended unless its underlying polices require it be so. *Laun*, 166 S.W.2d at 1069. In Missouri, this immunity generally has been restricted to defamation, defamation-type, or retaliatory cases against adverse witnesses. This narrow restriction is consistent with the historical development of immunity." *Id.* at 679-80.

Here, the amended complaint is out of the realm of defamation and does not contains claims against Page. Yow is not claiming that either Page or JCT defamed

---

3 The *Murphy* case was an action against an engineering firm for professional negligence in preparing litigation-related services, to which the engineering firm asserted a defense of witness immunity. The Missouri Supreme Court held that witness immunity did not bar the claim for negligent pretrial litigation support services. *Id.* at 680.

his character by Page's deposition testimony. The amended complaint alleges that JCT was under a court order to provide truthful testimony. Yow further alleges that JCT should be directly liable for its conduct and Page's false statements were a part of an effort by defendants to commit fraud on the court/courts during the course of this extensive litigation. In this case, Yow claims that JCT's violation of a court order and affirmative misstatements to the courts render it liable to Yow. The amended complaint alleges numerous acts and omissions by JCT besides Page's deposition testimony and errata sheet, including Page's execution of a 2006 affidavit suggesting that JCT not AHC modified the skids on Yow's rig. The Court finds that Yow's claims against JCT are not barred by witness immunity.

Finally, the Court addresses defendants' arguments for transfer to the Western District of Missouri pursuant to 28 U.S.C. § 1404(a). Yow opposes the motion. Based on the following, the Court too denies the motion.

### Motion to Transfer Standard

Section 1404(a), which governs the transfer of an action from one federal district court to another, provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The purpose of § 1404(a) is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expenses ...." *Van Dusen v.* Barrack, 376 U.S. 612, 616 (1964). Defendant

bears the burden of establishing that the transferee forum is "clearly more convenient." *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220 (7th Cir. 1986).

In weighing these factors, a task committed to the sound discretion of the trial judge, district courts must consider the statutory factors in light of all the circumstances of the case. *Id.* at 219. When assessing convenience, courts generally look to "each party's access to and distance from resources in each forum," "the location of material events," "the availability of and access to witnesses," and "the relative ease of access to sources of proof." *See Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.,* 626 F.3d 973, 978 (7th Cir. 2010).

As to the interests of justice, courts consider "docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Id.* (citations omitted). The Court stresses that "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *In re Nat'l Presto Indus., Inc.,* 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947)). Stated more plainly, a tie goes to plaintiff. *Id.* at 665.

Here, defendants have not met their burden of demonstrating that the Western District of Missouri is clearly more convenient. The amended complaint alleges the value of plaintiff's claims, which were litigated in this judicial district before the undersigned from 2004 to 2007 and were settled in mediation before

Magistrate Judge Williams. In addition, Yow's original injury occurred in Peoria, Illinois and all the material events since the accident have occurred in this judicial district except for Gary Page's deposition which occurred in Kansas City, Missouri. Further, Yow chose to litigate the case in this judicial district, where his claims have been litigated for the past 11 years. Unquestionably, the Southern District of Illinois is convenient for plaintiff. As to the convenience of this forum to Jack Cooper and AHC, both are headquartered in Missouri. Further, records, investigative reports and any other such documents can easily be brought to this judicial district. The Court does not believe that keeping the case in the Southern District of Illinois would be especially inconvenient for defendants. Thus, the Court is not persuaded that the transferor district is any less convenient for defendants than the transferee district.

The same applies for the convenience of witnesses. Defendants cite to witnesses, a lawyer and court reporter, who will likely reside in Missouri and AHC maintenance employees who work in Wentzville, Missouri (who may be subpoenaed) as demonstrating the Western District of Missouri is clearly more convenient. Further, defendants argue that expert witness testimony will be necessary and would require visiting the Wentzville terminal. The Court finds that any of these witnesses deemed necessary to this case could be offered to the jury via deposition. As to the convenience of witnesses, the Court finds that the Southern District of Illinois is just as convenient to the witnesses as the Western District of Missouri.

Lastly, the Court must consider the "interest of justice" component of the transfer analysis. "Public interests" address the interest of justice and include: (1) the speed of the proceeding; (2) the Court's familiarity with applicable law; and (3) the relation of the community to the occurrence and the desirability of resolving the controversy in its locale. The speed of proceeding leans toward the Western District of Missouri. Based on the most recent statistics March 2015/June 2015, the median time from the filing to disposition in civil cases is 39/35 months in the Southern District of Illinois and 9.9 months in the Western District of Missouri. However, the Court is familiar with the facts of the underlying case, with the parties and lawyers, and the applicable law, thus, this factor weighs toward the Southern District. Further, the Court notes that this district also has a strong interest in litigating this case as it previously presided over the underlying case. Similarly to the convenience factors, the interest of just inquiry demonstrates the weight of the factors tilts slightly towards the Southern District of Illinois. Thus, defendant has not met its burden.

The Court notes that the Seventh Circuit has held that ease of access to the sources of proof, easy air transportation, the rapid transmission of documents and the abundance of law firms with nationwide practices, make it easy for cases to be litigated with little extra burden in any of the major metropolitan areas. *Board of Trustees, Sheet Metal Workers National Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000). The Southern District of Illinois is located in the

St. Louis metropolitan area, hence, this factor strongly favors not transferring the suit.

## Conclusion

Accordingly, the Court **DENIES** the motions to dismiss or, in the alternative, transfer (Docs. 40 & 42).

**IT IS SO ORDERED.**

Signed this 29th day of October, 2015.

Digitally signed by Judge David R. Herndon
Date: 2015.10.29 16:38:53 -05'00'

**United States District Court**